# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Carl C.,

        Plaintiff,

v.

Nancy Berryhill,

        Defendant.

Case No. 0:17-cv-03682-KMM

**ORDER**

Charles F. Webber and Courtney Baga, Faegre Baker Daniels LLP, counsel for the plaintiff

Bahram Samie, Assistant United States Attorney; Michael Moss, Social Security Administration, Office of the General Counsel, Region VI; counsel for the defendant

---

The plaintiff, Carl C.,[1] applied for disability insurance benefits and supplemental security income from the Social Security Administration in November of 2013, asserting that he became disabled on January 1, 2011. The Commissioner of the Social Security Administration ultimately denied his application on July 7, 2017, and Carl C. filed this lawsuit challenging the Commissioner's decision *pro se*. Since that time, Carl C. has obtained volunteer counsel.[2]

---

[1]    To address privacy concerns that arise in Social Security cases, the Court refers to the plaintiff throughout this opinion by his first name and last initial: "Carl C."

[2]    The Court thanks the volunteer attorneys who have appeared on Carl C.'s behalf and the Federal Bar Association's *Pro Se* Project for its work in facilitating the Court's referral in this case.

This matter is now before the Court on the parties' cross-motions for summary judgment. (Pl.'s Mot., ECF No. 18; Def.'s Mot., ECF No. 22.) Carl C. argues that the Commissioner's decision should be reversed because an Administrative Law Judge ("ALJ") misapplied Social Security rules applicable to disability claims where an individual has a history of drug and alcohol abuse. (*See* Pl.'s Mem. at 8–20, ECF No. 19.) For the reasons that follow, Carl C.'s motion is denied and the Commissioner's motion is granted.

## I.    Factual Overview

Carl C. has a history of both mental-health issues and alcohol and substance use. Congress has determined that "if alcohol or drug abuse is a 'contributing factor material to the Commissioner's determination' of disability, the claimant is not entitled to benefits." *Vester v. Barnhart*, 416 F.3d 886, 888 (8th Cir. 2005) (citing 42 U.S.C. § 423(d)(2)(C)). The application of this congressional mandate to Carl C.'s case is the central issue before the Court.

### *Background*

Carl C. was born in June of 1963. (*See* Administrative Record ("R.") 334, ECF No. 10.) He had a difficult childhood involving abuse by siblings and an older brother's friend and witnessing violence in his neighborhood. (R. 732.) Carl C. joined the United States Army in 1984 so that he could support his wife and child, but he experienced racial prejudice during his service. (R. 738.) His service ended in 1986 following an incident in which he was physically attacked by a superior officer. (R. 141, 738, 853–54.) Because of that incident, he is receiving "service-connected disability" benefits from the Veterans Administration. (R. 139–40, 417.)

Aside from his time in the Army, Carl C. held other jobs over the years, but usually these lasted at most a few months. (R. 388, 853.) At various times he worked

as a janitor, in a warehouse, in construction, and as a small-products assembler.[3] (R. 420.) However, he stopped working altogether on January 1, 2011. (R. 356, 361.)

### Alcohol and Substance Use

Over the years Carl C. has struggled with drug and alcohol use. He began drinking alcohol at age 13–14, continued drinking during high school, and was drinking every day when he was in the Army following the assault mentioned above. (R. 854.) He has four convictions for driving under the influence of alcohol, including a felony in 2012. (R. 142–43, 854.) He was also introduced to powder cocaine while in the Army, and he began using crack cocaine after he was discharged. (R. 854.)

However, Carl C. has also had a period of sobriety. As described in the opinion of Dr. Mark Oberlander, a medical expert who testified during the administrative proceedings, the record reflects "two different time periods[:] one time period which involved material substance use, resulting in serious psychiatric impairment … followed by a time period where … some level of abstinence has been reached, substance abuse in remission to the present." (R. 148.) The first period identified by Dr. Oberlander lasted from January 1, 2011 through the end of 2013.[4] (R. 148.) The second period runs from the end of 2013 through the present.[5] (R. 148.)

---

[3] Carl C. listed work with medical records in a work history report, but later clarified that this was in reference to training courses he took for medical-records coding that he was unable to complete. (*See* R. 143, 151–52, 381.)

[4] Dr. Oberlander did not conclude that Carl C.'s substance abuse began in 2011, but he started his analysis there because January of 2011 is the alleged onset date of Carl C.'s disability.

[5] Dr. Oberlander's testimony in March of 2016 was based on his review of medical records ending in June of 2015. (Tr. 148.) There is no indication that Carl C. began using drugs and alcohol again between June 2015 and the date of the Commissioner's decision in this case.

Commendably, Carl C. appears to have maintained his sobriety over several years. (*See* R. 66 (Aug. 8, 2016 letter indicating negative random urinalysis results since July of 2015); R. 82–131 (ignition interlock records indicating frequent passed breathalyzer testing between June 4, 2016 and Nov. 24, 2015).)

### *Procedural History*

When Carl C. applied for disability benefits on November 14, 2013, he was almost 51 years old and was living in a group home. (R. 370.) He alleged that he had been unable to work since January 1, 2011 due to post-traumatic stress disorder ("PTSD"), depression, anxiety, and suicidal tendencies.[6] (R. 200, 334–43, 360.) His claim was denied initially and on reconsideration, and he requested a hearing before an ALJ. (R. 171–83, 197–207, 259–60.) On March 28, 2016, ALJ Lovert F. Bassett held a hearing in Evanston, Illinois, at which Carl C. appeared in person and testified in support of his claim. (R. 136–64.) Dr. Oberlander testified at that hearing, as did a vocational expert, Linda Gels. After the hearing, on June 20, 2016, ALJ Bassett issued a written decision concluding that Carl C. is not disabled.[7] (R. 222–40.)

ALJ Bassett found that Carl C. has medically determinable severe impairments including personality disorder, depression, anxiety, cocaine addiction, and alcoholism. (R. 225.) The ALJ also determined that when Carl C.'s substance use disorders are considered, he is disabled. ALJ Bassett explained that when he is using alcohol or drugs, Carl C. has "auditory and visual hallucinations, delusions, paranoia, depressed mood, anxiety, memory loss, and difficulty concentrating or thinking." (R. 225–27.) Giving great weight to Dr. Oberlander's medical opinion, ALJ Bassett found that the

---

[6]     Carl C. does not allege that he has any physical limitations that prevent him from working.

[7]     ALJ Bassett's decision became the final decision of the Commissioner when the Appeals Council declined Carl C.'s request for further review. (AR 1–7.) There is no dispute that the Court has jurisdiction over this lawsuit pursuant to 42 U.S.C. § 405(g).

objective medical evidence showed "a longitudinal history of an inability to function due to interaction of [Carl C.'s] mental condition and substance abuse disorder." (R. 226.)

However, in the absence of substance use, ALJ Bassett concluded that Carl C. was not disabled within the meaning of the Social Security Act. First, the ALJ determined that Carl C.'s personality disorder, depression, and anxiety would still cause more than a minimal impact on his ability to work in the absence of any substance use. (R. 227.) However, the ALJ found that Carl C. would be only mildly limited in his activities of daily living, moderately limited in social functioning, and moderately limited in his ability to maintain concentration, persistence, and pace. (R. 227–29.) Based on a review of treatment records and other objective medical evidence, the ALJ found that Carl C. "alcoholism and substance abuse are contributing factors material to the determination of disability[.]" (R. 236.) Further, ALJ Bassett was "not persuaded that [Carl C.] has work-preclusive and marked mental impairment symptoms despite treatment, as there is no objective support for [such] extreme limitations in the record if abuse of alcohol were stopped." (R. 236.) Because ALJ Bassett found that Carl C. retained the ability to perform certain work-related tasks in the absence of substance abuse, and that "residual functional capacity" corresponds to a significant number of jobs that are available in the national economy. Therefore, he concluded that Carl C. is not disabled within the meaning of the Social Security Act. (R. 236–40.)

## II.    Legal Standards

In reviewing the Commissioner's denial of Carl C.'s application for benefits the Court determines whether the decision is supported by "substantial evidence on the record as a whole" or results from an error of law. *Gann v. Berryhill*, 864 F.3d 947, 950 (8th Cir. 2017); *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance of the evidence, but is such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)

(internal citations and quotation marks omitted). The Court considers not only the evidence supporting the Commissioner's decision, but also the evidence in the record that "fairly detracts from that decision." *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). However, the Court does not reverse the Commissioner's decision merely because substantial evidence also supports a contrary outcome or the record might support a different conclusion. *Gann*, 864 F.3d at 950; *Reed*, 399 F.3d at 920. The Court should reverse the Commissioner's decision only where it falls outside "the available zone of choice," meaning that the Commissioner's findings is not among the reasonable positions that can be drawn from the evidence in the record. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008).

An ALJ evaluates a disability claim according to a five-step sequential process.

(1) First, the ALJ considers whether the claimant is engaged in substantial gainful activity.

(2) If the claimant is not engaged in substantial gainful activity, the ALJ must determine whether the claimant has a severe medically determinable impairment or combination of impairments.

(3) If the claimant has a severe impairment or impairments, the ALJ asks whether he meets or medically equals the criteria of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. If he does, the claimant is disabled, the analysis ends, and benefits are awarded.

(4) If the claimant does not meet a listing, the ALJ must determine the claimant's residual functional capacity ("RFC"), which represent the most the claimant is able to do despite his severe impairments. Based on the claimant's RFC, the ALJ asks if he is capable of doing any of his past relevant work. If the claimant is able to do his past relevant work, he is not disabled and his claim is denied, but if he cannot do his past relevant work the ALJ proceeds to the final step.

(5) If the claimant is unable to perform any of his past relevant work, the ALJ determines whether there are a significant number of jobs in the national

economy that an individual with the claimant's RFC could perform. If there are, the claimant is not disabled, and if not, the claimant is awarded benefits.

*See* 20 C.F.R. §§ 404.1520, 416.920.

This sequential evaluation is augmented in cases where there is evidence of an impairment caused by alcohol and drug abuse. Though alcohol and substance addictions can certainly interfere with an individual's ability to work in a competitive environment, for purposes of Social Security benefits, Congress has provided that "[a]n individual shall not be considered to be disabled … if alcoholism or drug addiction would … be a contributing factor material to [a] determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Therefore, if there is evidence of drug addiction or alcoholism (sometimes referred to as "DAA"), an ALJ must determine whether it "is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). The ALJ is required to determine whether the claimant "would still [be] disabled if [he] stopped using drugs or alcohol." *Id.* §§ 404.1535(b)(1), 416.935(b)(1).

To make that determination, the ALJ asks which of the claimant's "current physical and mental limitations, upon which [the SSA] based [its] current disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [his] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the claimant's remaining limitations would not be disabling, then the claimant's "drug addiction or alcoholism is a contributing factor to the determination of disability." *Id.* §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). If, however, the remaining limitations would still be disabling, then the claimant is disabled independent of drug addiction or alcoholism, and DAA "is not a contributing factor material to the determination of disability." *Id.* §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii); *see also Brueggemann v. Barnhart*, 348 F.3d 689, 693–94 (8th Cir. 2003) (citing DAA regulations and discussing their proper application).

When reviewing the ALJ's determination that drug addiction or alcoholism is a contributing factor material to disability, a federal court considers whether substantial evidence in the record supports the conclusion that the claimant's remaining limitations would not be disabling if he stopped using drugs or alcohol. *See Slater v. Barnhart*, 372 F.3d 956, 957 (8th Cir. 2004) (affirming denial of benefits where substantial evidence supported the ALJ's finding that alcoholism or drug addiction was a contributing factor to the determination that the claimant was disabled); *Bernard v. Astrue*, 974 F. Supp. 2d 1247, 1263–64 (D. Minn. 2014). A reviewing court should affirm the ALJ's denial of benefits if "a reasonable person considering the record as a whole could reach the conclusion adopted by the ALJ." *Vester*, 416 F.3d at 892.

## III. Analysis

In his motion for summary judgment, Carl C. asserts that the ALJ's conclusion that he was not entitled to disability benefits is not supported by substantial evidence and that this matter should be remanded to the Commissioner "for a determination of the appropriate level of benefits." (Pl.'s Mem. at 19.) The Court is sympathetic to Carl C.'s struggles, particularly because they derive in part from his military service. But having reviewed the entire record, the Court concludes that the Commissioner's denial of benefits was not the product of any legal error and that the ALJ's findings, though not always discussed with the greatest clarity, are supported by substantial evidence. Accordingly, Carl C.'s request for remand must be denied and the Commissioner's motion for summary judgment affirming the denial must be granted.

### A. Severe Impairments During Sobriety

Carl C. points out that although his medical records detail past substance-use disorders, "those records also demonstrate that his <u>other</u> impairments (*i.e.*, depression, anxiety, PTSD, and personality disorder) continued and remained severe throughout his recovery from substance abuse." (Pl.'s Mem. at 9.) The record indeed confirms that Carl C. suffers from severe mental-health impairments irrespective of alcohol and drug abuse, and ALJ Bassett clearly determined that was the case. (R. 227 ("If the

claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.").) Specifically, the ALJ found that Carl C.'s mood/affective disorder, in combination with his anxiety and personality disorder, qualified as severe impairments. (R. 227.) The DAA regulations required the ALJ to consider which of Carl C.'s mental-health limitations would remain if he stopped using drugs or alcohol. *See* 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).

However, Carl C. argues that the ALJ's finding that he has severe impairments even without substance use "removed any legitimate doubt that [he] is entitled to some degree of social security benefits." (Pl.'s Mem. at 8.) But this argument misapprehends the DAA regulations. In a disability case where there is evidence of a severe drug or alcohol impairment, a claimant is not "disabled" simply because other "severe" impairments exist when he abstains from drug and alcohol use. *Cf. Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000) (noting that "there was evidence that Mr. Pettit stopped drinking and yet continued to suffer from depression," but disagreeing "with Mr. Pettit's contention that we should direct the Social Security Administration to award benefits to him" because the record did not compel the conclusion that "Mr. Pettit refrained from drinking but was nonetheless disabled by depression"). A "severe" impairment is one that causes more than a minimal limitation on the individual's ability to work, 20 C.F.R. §§ 404.1520(c), 416.920(c), and an ALJ determines which medically determinable severe impairments a claimant has at the second step of the sequential evaluation. Even if a claimant has severe impairments in the absence of drug or alcohol use, application of the sequential analysis still requires the ALJ to consider whether those severe impairments render the claimant disabled. That is the process ALJ Bassett followed in this case.

### B. Listings Analysis

As noted above, ALJ Bassett found that when Carl C.'s drug and alcohol dependence is present, he meets or medically equals Listings 12.04 (depression), 12.06

(anxiety), 12.08 (personality and impulse-control), and 12.09 (substance addiction). (R. 225–27.) Of particular relevance here, in analyzing the so-called "paragraph B criteria" the ALJ found that Carl C. has extreme difficulties in maintaining concentration, persistence, or pace "when considering the substance use disorders." (R. 226.) "To satisfy the paragraph B criteria, [a claimant's] mental disorder must result in extreme limitation of one, or marked limitation of two, paragraph B areas of mental functioning."[8] 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Because ALJ Bassett found that Carl C. would have severe impairments in the absence of substance use, the ALJ had to determine whether any of those impairments, alone or in combination, would satisfy the paragraph B criteria. ALJ Bassett found that "[i]f the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the [relevant Listings]" and "would not have marked or extreme restrictions or limitations" for any of the paragraph B criteria. (R. 227.) Carl C. argues that this finding was not supported by substantial evidence. (Pl.'s Mem. at 11.) For the reasons that follow, the Court concludes that the ALJ's determination was supported by substantial evidence on the record as a whole.

### 1. Substantial Evidence

The Court concludes that ALJ Bassett's finding that the paragraph B criteria were not satisfied in the absence of substance use is supported by substantial evidence

---

[8]     The ALJ's opinion is not perfectly clear on this point. Though he found only moderate limitations in activities of daily living and social functioning when considering the substance use disorders, the ALJ wrote "because the claimant's mental impairments … cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, the 'paragraph B' criteria are satisfied." (R. 226.) Although this statement does not accurately represent the specific findings ALJ Bassett reached, he did find an extreme limitation in maintaining concentration, persistence, or pace when factoring in Carl C.'s substance use, which was sufficient to determine that Carl C. satisfied the paragraph B criteria. Any error with the way the ALJ phrased this finding is harmless.

on the record as a whole. With respect to Carl C.'s activities of daily living, ALJ Bassett referenced two "Function Report[s]" that Carl C. completed in December of 2013 and October of 2014 respectively. (R. 227–28 (citing Exs. 3E and 9E).) These Function Reports support the ALJ's conclusion that Carl C. would be mildly restricted in activities of daily living. The latter, which Carl C. submitted after nearly 10 complete months of sobriety, indeed indicates that he has no problems with personal care, doing house and yard work, shopping for food in stores, preparing sandwiches and frozen meals for himself. (R. 400–07.) Even in December 2013, when his substance use was coming to an end, Carl C. reported that he was able to pay bills, count change, handle a savings account, and use a checkbook or money orders. (R. 373.) He also indicated he could use public transportation. (R. 373.)

Turning to ALJ Bassett's conclusion regarding Carl C.'s limitations in social functioning, the record also supports the finding that he has moderate difficulties in the absence of substance use. Again, the ALJ relied on Carl C.'s Function Reports, which show he has challenges in getting along with or being around other people, but not to a marked or extreme degree. (R. 368–77, 400–07.) There is also support in the record for the ALJ's recognition that Carl C. was able to go to classes without "reports of exacerbations from public contact." (R. 228, 780. 793–94, 828–33, 844–45.) Carl C. attended AA meetings without reports of social functioning being a major problem. (R. 228, 145, 780–84.) As noted by ALJ Bassett, Carl C. was also married in April of 2015. (R. 844–45.)

There is also support in the record for the ALJ's determination that, in the absence of substance use, Carl C. has moderate (as opposed to marked or extreme) limitations in maintaining concentration, persistence, or pace. (R. 228.) Again, the ALJ appropriately relied on Carl C.'s Function Reports, which indicated that he is able to follow instructions, manage finances and shop in stores. (R. 228, 368–77, 400–07.) The ALJ also mentioned psychiatric evaluations at Family Life Mental Health with a psychiatrist, Dr. Darell Shaffer. Dr. Shaffer's treatment notes support the ALJ's conclusion that Carl C.'s ability to maintain concentration, persistence, and pace

improved after he stopped using substances. (R. 799 (May 9, 2014 evaluation showing above average intellectual ability, "fair to poor" attention and concentration); R. 801–04 (May 16, 2014 progress note indicating has an "intact" attention span and concentration); R. 818–21 (Oct. 31, 2014 progress note showing attendance at classes and "intact" attention span and concentration).)

Carl C.'s own treatment records further indicate improved functioning during his period of sobriety and therefore support the ALJ's conclusions. From May of 2014 through June of 2015, Carl C. regularly saw social worker Robert Boswell at Family Life Mental Health. Though Carl C. continued to have nightmares during this period and exhibited symptoms of depression and anxiety, the progress notes indicate that he consistently arrived with a cooperative attitude, exhibited appropriate thinking, was not having suicidal thoughts, retained intact judgment, and was oriented to time, person, place and situation. He expressed interest in joining a trauma group, reflecting an improvement in his desire to be around others. He reported doing well in his classes. Carl C. indicated that he was concerned about seeing relatives during a trip to Chicago, but he later reported no problems or conflicts from his interactions. In June of 2015, Mr. Boswell indicated that he thought Carl C. was "capable of working or going to school half time" when Carl C. asked for "disability paperwork indicating that he couldn't work at all for a year, or 45 days minimum." (R. 847; *see generally* R. 787–808, 814–48.)

## 2. Dr. Oberlander's Opinion

ALJ Bassett's determination that Carl C. did not meet or medically equal any of the relevant Listings in the absence of substance use is also supported by Dr. Oberlander's expert medical opinion. ALJ Bassett gave Dr. Oberlander's opinion great weight and he discussed the opinion at length. (R. 226–27, 230–32, 236–37.) Dr. Oberlander accurately characterized the record as demonstrating both a period of sobriety and a period of active substance use with functioning that improved during the later time of abstinence. (R. 148–49.) Dr. Oberlander opined that during the period without substance use, Carl C. would have mild impairment in activities of

daily living; moderate impairment in his capacity for social functioning; and moderate impairment in his ability to maintain concentration, persistence, and pace. (R. 148–49 (testimony), 231–32 (ALJ decision discussing Dr. Oberlander opinion regarding paragraph B criteria).) Dr. Oberlander noted that records from Carl C.'s period of sobriety showed that he volunteered at the Salvation Army, occasionally playing the drums for church services. He also pointed to the 2014–2015 treatment records from Carl C.'s visits with Mr. Boswell, explaining that those progress notes demonstrate "some measure of stabilization, improvement, [and] lessening of symptom severity…." (R. 147–48.)

Based on the Court's review of the entire record, Dr. Oberlander's opinion is consistent with Carl C.'s treatment records and other substantial evidence. As a result, it was appropriate for the ALJ to rely upon Dr. Oberlander's opinion in determining that Carl C. was not disabled. *See Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) (concluding that an ALJ did not err in relying on the opinion of a physician who reviewed the medical evidence where the opinion was consistent with the available medical evidence).

Carl C. asserts that Dr. Oberlander's opinion was not entitled to great weight because he stated opinions regarding Carl C.'s sobriety in hypothetical terms rather than acknowledging that his substance use had, in fact, stopped. (*See* Pl.'s Reply at 12, ECF No. 24.) This issue does not require reversal or remand. As noted above, Dr. Oberlander explained that the record demonstrated that Carl C. stopped using drugs and alcohol after January of 2014. Indeed, he concluded that the record had to be considered in terms of two separate periods for that very reason. Dr. Oberlander's choice of words is not indicative of disregarding important evidence.

Carl C. next suggests that Dr. Oberlander's opinion should not have received great weight because Dr. Oberlander did not have any records later than June of 2015. (Pl.'s Reply at 12.) Dr. Oberlander acknowledged this fact in his testimony. (R. 148.) However, Carl C. does not point to any medical records from after June 2015 that contradict Dr. Oberlander's opinion. Moreover, even though Dr. Oberlander did not

have the most recent records, ALJ Bassett reached his decision in this case based on the full record, and this Court's review confirms that there are no post-June 2015 records that undermine Dr. Oberlander's opinion or suggest that it is incomplete. *Yee Yang Vue v. Colvin*, No. 13-cv-357 ADM/FLN, 2014 WL 754873, at *9 (D. Minn. Feb. 26, 2014) ("The fact that [a state agency medical consultant] did not have access to all of the records … does not prevent the ALJ from assigning significant weight to [the consultant's] assessment if the ALJ conducted an independent review of the evidence, which included notes the consultant had not considered.") (citing *Carter v. Astrue*, 886 F.Supp.2d 1093, 1112 (N.D. Iowa 2012) and *Thacker v. Astrue*, No. 3:11-cv-246-GCM-DSC, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011)).

### 3. Evidence of Sobriety

Carl C. next contends that the ALJ ignored evidence of his sobriety. (*See* Pl.'s Mem. at 11–13.) ALJ Bassett framed his findings and his analysis of the evidence in hypothetical terms, discussing the degree of limitation Carl C. would demonstrate "if [he] stopped the substance use." (*See* R. 227.) Because the evidence in the record demonstrates that Carl C. maintained sobriety (*i.e.*, he *had* stopped using drugs and alcohol) from late 2013 or early 2014 going forward,[9] ALJ Bassett certainly could have, and arguably should have, stated his findings by indicating what the evidence shows *when* Carl C. abstained. Indeed, it is "simpler" to determine "whether a claimant

---

[9]     A January 2, 2014 treatment note from psychologist Karen King at Behavioral Health Services indicates that shortly before Christmas of 2013, Carl C. drank alcohol and used drugs. (R. 729.) It appears that his sobriety began shortly thereafter. Treatment notes and other evidence in the record from 2014–2015 demonstrate that Carl C. maintained sobriety after that. (*See* R. 816–47 (October 2014 through June 2015 treatment notes with social worker Robert Boswell); R. 737–43 (Jan. 2014–May 2014 treatment notes with psychologist Karen King); R. 66 (Ramsey County Probation letter indicating that Carl C. had negative urinalysis tests between Jul. 2015 and Aug. 2016); R. 67–81 (RSI Labs records); R. 82–131 (ignition interlock records from June 2015 through Nov. 2015).)

would still be disabled if he or she stopped drinking" when "the claimant actually has stopped." *Pettit*, 218 F.3d at 903.

ALJ Bassett's articulation of his findings using "if" phrases does not require reversal. The ALJ's framing of these considerations was, at most, an error in opinion writing that neither interferes with the Court's ability to provide meaningful judicial review nor changes the outcome of the case. *Owen v. Astrue*, 551 F.3d 792, 801 (8th Cir. 2008) ("[A]n arguable deficiency in opinion-writing technique does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome."). The Court is not convinced that the ALJ ignored or misunderstood evidence relating to Carl C.'s period of sobriety. ALJ Bassett acknowledged at the time of the written decision that Carl C. "has now been in remission." (R. 227.) ALJ Bassett also analyzed treatment records from Carl C.'s period of sobriety and found that such evidence weighed against a finding of disability. (R. 234–36.) The ALJ likely continued to use hypothetical phrasing, not because he disregarded evidence of sobriety, but because the DAA regulations are phrased in the hypothetical and often the DAA regulations can only be applied hypothetically. Many claimants do not achieve sobriety as Carl C. did.

### 4. Conclusion

For all these reasons, the Court concludes that he ALJ's finding that in the absence of substance use Carl C. does not meet or medically equal any of the Listings is supported by substantial evidence on the record as a whole.

### C. "Credibility" Analysis

Carl C. also raises an issue with the ALJ's "credibility" determination. He argues that the ALJ erred in rejecting his statements about the extent of his limitations based on his activities of daily living and in providing a "cursory treatment" of the fact he receives disability benefits from the Veterans Administration. (*See* Pl.'s Mem. at 15–17.)

In his June 20, 2016 decision,[10] as part of the residual-functional-capacity ("RFC") determination, ALJ Bassett made the following finding:

> If the claimant stopped the substance use, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the evidence as a whole. To the extent they are inconsistent with the residual functional capacity assessment, they are not supported for the reasons explained below, but primarily because his subjectively reported symptoms are grossly disproportional to the objective findings in the medical records in the absence of substance use.

(R. 232.) The ALJ then went on to discuss: (1) records from a period of abstinence while Carl C. was incarcerated that noted no mental health referral was completed (R. 232); (2) records from prior to January of 2014 showing lower levels of functioning during periods of substance use (R. 232–33); and (3) records from January 2014 through the end of the relevant period showing improved functioning during sobriety (R. 233–35).

---

[10] For determinations and decisions made by Social Security on or after March 28, 2016, Social Security Ruling 16-3p applies to the way an ALJ evaluates symptoms. In that ruling, the SSA states: "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). This ruling requires ALJs "to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." *Id.* ALJ Bassett discussed Carl C.'s "credibility" in his evaluation of the intensity, persistence, and limiting effects of Carl C.'s symptoms, which diverges from the guidance provided in SSR 16-3p. However, the ALJ's decision is clearly based on a thorough evaluation of the entire record and Carl C. does not argue that any failure to follow the guidance in SSR 16-3p requires reversal.

The Court disagrees that the ALJ improperly evaluated Carl C.'s daily activities when determining whether his own statements about the intensity, persistence, and limiting effects of his symptoms were supported by the entire record. A claimant's "daily activities" are among the factors that an ALJ is required to consider in addressing the intensity, persistence, and limiting effects of an individual's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). ALJ Bassett discussed Carl C.'s daily activities in the section of his opinion addressing the Listings, noting that Carl C. reported having no problems with performing personal care; was able to clean his room and take out the garbage; could use public transportation and shop in stores; prepared sandwiches and frozen dinners; and did household chores. (R. 227.) Though a claimant cannot be considered capable of full-time work merely because he is not bedridden, it is proper for an ALJ to consider daily activities like Carl C.'s when evaluating whether a claimant's symptoms are as disabling as alleged by a claimant. *See Rahe v. Astrue*, 840 F. Supp. 2d 1119, 1136 (N.D. Iowa) ("Although a claimant need not be bedridden before he can be determined to be disabled, Rahe's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints.") (internal quotations and alterations omitted).

More importantly here, ALJ Bassett evaluated evidence from throughout the record in reaching the determination that the intensity, persistence, and limiting effects of Carl C.'s stated symptoms were not consistent with the record as a whole. (R. 232–35.) The Court's independent review of the medical records from the period when Carl C. maintained sobriety support a conclusion that he was capable of functioning at a greater level than alleged. The ALJ took into account all of the evidence in fashioning a mental-RFC that would accommodate his limitations. Accordingly, the Court concludes that the ALJ did not err in evaluating Carl C.'s daily activities.

The Court also finds that the ALJ did not err in considering but not following VA's disability determination in this case. An ALJ is required to consider a finding of

disability by another agency. *See Morrison v. Apfel*, 146 F.3d 625, 628 (8th Cir. 1998).[11] However, an ALJ is not bound by another agency's disability determination because the ALJ is required to apply the Social Security standards for determining whether a person is disabled within the meaning of the Social Security Act, standards which may differ significantly from those applied by other agencies pursuant to other statutes and regulations. *See Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006) (citing 20 C.F.R. § 404.1504; *Fisher v. Shalala*, 41 F.3d 1261, 1262 (8th Cir. 1994) (per curiam) ("There is no support for [the claimant]'s contention that his sixty-percent service-connected disability rating equates with an inability to engage in any substantial gainful activity under social security standards.")).

Consistent with these rules, ALJ Bassett addressed the VA's disability determination and noted that it was not binding on Social Security. (R. 237.) The ALJ further explained that the VA determination did not provide persuasive evidence that Carl C. is disabled. He found that the VA records were "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion, what records were reviewed, and what impairments were considered … in fact, the most recent VA evaluation noted that no collateral sources were reviewed." (R. 237.) Further, the ALJ

---

[11]    The Social Security Administration has provided the following guidance about disability decisions by other governmental agencies:

> [a] decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency [e.g., Workers' Compensation, the Department of Veterans Affairs, or an insurance company] that you are disabled or blind is not binding on us.

Titles II & Xvi: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources: in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernmental Agencies, SSR 06-03P, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006).

found that any opinion expressed in the VA disability records did not outweigh Dr. Oberlander's opinion given that the latter was clear and substantial. ALJ Bassett stated that Dr. Oberlander's opinion "was more persuasive because it left no doubt in the mind of the [ALJ] that cocaine and alcohol keep [Carl C.] out of the work force." (R. 237.) The ALJ could not determine from the VA's disability determination if benefits are available from the VA even where alcohol or drug use is a materially contributing factor to the determination of disability (R. 237), a reality that alone would differentiate that determination from the one the ALJ is required to make in applying Social Security disability law. Having reviewed the VA records, and all of the evidence that was available in Carl C.'s administrative proceeding, a reasonable person could reach the same conclusion. The January 12, 2015 VA records do not differentiate between the severity of symptoms from mental health disorders in the presence of substance use and in its absence. (R. 417, 849–61.) These records also do not specify the medical records relied on, and indeed state that no information from collateral sources was reviewed.[12] (R. 852.) The ALJ also accurately observed that the VA records indicated that Carl C. had his own apartment since June of 2014, could manage his own financial affairs, and had improving relationships with family members. (R. 235, 853, 860.) Accordingly, the Court cannot conclude that the ALJ erred in considering the VA's records.

D. **Internal Inconsistency**

Finally, Carl C. contends that the ALJ's RFC analysis is internally inconsistent. Carl C. asserts that ALJ Bassett determined that he would continue to have severe impairments even in the absence of substance use, but could nevertheless have the residual functional capacity to perform full-time work. (Pl.'s Mem. at 17–18.) This is

---

[12]     The VA disability records also indicate that Carl C. provided responses during an interview about his application in a "highly unusual[] manner, endorsing many deviant items that even psychiatric inpatients do not endorse. This suggests deliberate exaggeration and potential feigning of mental health symptoms." (R. 860.) The ALJ also noted this in his discussion of the VA psychologist's evaluation. (R. 235.)

not an internally inconsistent determination. As explained above, an individual can be found to have "severe" impairments within the meaning of the Social Security regulations at the second step of the sequential analysis and still have the ability to perform full-time work consistent with his residual functional capacity. *See* discussion, *supra*, Part III.A.

In the RFC finding, the ALJ determined that in the absence of substance use, Carl C. can perform a full range of work at all exertional levels, but only when subject to certain significant limitations designed to accommodate his severe mental-health impairments. These included that: Carl C. is limited to jobs that require a worker to understand, remember, and carry out simple job instructions; he can tolerate only occasional interaction with co-workers and supervisors, but could not be involved in collaborative joint projects with them or any involvement with the public; and he cannot work a job with strict numerical production quotas that must be satisfied within rigidly structured hourly time-sensitive boundaries. Beyond asserting that he cannot work full-time in any job, Carl C. does not raise any specific challenge to these limitations. Nevertheless, the Court has reviewed Carl C.'s RFC in light of the entire record in this case and determines that a reasonable person could reach the same RFC finding as the ALJ. The limitations imposed recognize Carl C.'s improved social functioning and ability to maintain concentration while also reflecting the ways in which his mental-health impairments could interfere with his ability to do certain jobs.[13]

---

[13]     It is not entirely clear whether Carl C. challenges the evidence elicited from the vocational expert at the hearing based on the ALJ's hypothetical questions. However, because the Court finds no error in the RFC finding in this case, the hypothetical question ALJ Bassett posed to the vocational expert at the hearing based on that RFC was not in error. As a result, the vocational expert's testimony that a person with Carl C.'s RFC could do certain jobs that exist in substantial numbers in the national economy was adequately supported. *See Renstrom v. Astrue*, 680 F.3d 1057, 1067–68 (8th Cir. 2012) (concluding that because the RFC finding was supported by substantial evidence, the hypothetical question to the vocational expert that was based on the

(*footnote continued on following page*)

## IV.   ORDER

For all the reasons stated above, **IT IS HEREBY ORDERED THAT:**

1.   Plaintiff's motion for summary judgment **(ECF No. 18)** is **DENIED**;

2.   Defendant's motion for summary judgment **(ECF No. 22)** is **GRANTED**; and

3.   This matter is dismissed with prejudice.

**Let Judgment be entered accordingly.**

Date: September 27, 2018                    *s/ Katherine Menendez*
                                            Katherine Menendez
                                            United States Magistrate Judge

---

*(footnote continued from pervious page)*

RFC was proper, and the vocational expert's answer to that hypothetical question constituted substantial evidence supporting the denial of benefits).